IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL WILLIAMS, #113338,** | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 10-0575-CG-C |
| **ALLEN K. VALAER,** *et al.*, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

**I.  Complaint as Amended** (Docs. 1, 4, 5).

Before the Court is plaintiff's § 1983 complaint on the Court's complaint form (Doc. 1), an amended complaint (Doc. 4), and an affidavit (Doc. 5).  In these pleadings plaintiff makes claims about a number of unidentified disciplinary proceedings that are allegedly defective. (Doc. 1 at 4, 5, 8, 9, 13).  No disciplinary reports from these proceedings were filed by plaintiff, which would have assisted in clarifying his claims.  It is through the allegations of urinalyses being tampered with, testing problems, and broken chains of custody, and the chain of custody sheet indicating that plaintiff tested positive for marijuana (*id.* at 21) that the Court deduces that

plaintiff received disciplinaries for ingesting substances not permitted by the regulations of the Alabama Department of Corrections ("ADOC").

Typically, only one disciplinary serves as a basis for a § 1983 action because only one disciplinary contains a common nucleus of operative facts.  Due to plaintiff's scattered approach of cursorily mentioning several dates for violations or for disciplinaries, plaintiff has not developed a claim that states a violation of due process.  Furthermore, plaintiff's allegations show that he filed a state-court action challenging a disciplinary in the Circuit Court of Montgomery County, Alabama, (Doc. 5 at 1) and then appealed its adverse ruling to the Alabama Court of Criminal Appeals (*id.* at 2) and the Alabama Supreme Court (Doc. 1 at 3). The disciplinary that was litigated in state court was not identified.

Plaintiff's information shows that at least one disciplinary arose at J. O. Davis Correctional Facility ("J. O. Davis") (*id.* at 4),[1] another disciplinary arose at Atmore Work Release Center ("work release") (*id.* at 9), and another arose at Fountain Correctional Center ("Fountain").  Regarding the defendants to this action, two scientists are named as defendants, Allen K. Valaer at East Alabama Medical Center (*id.* at 5,11 ), and Jenna Colley at Aperiam Laboratory   (*id.* at 8, 11).  It is alleged that these two defendants were ordered by a judge on September 24, 2009 to provide an affidavit within thirty days, but neither did, and thus both were in default as of December 15, 2009 when an unidentified proceeding was scheduled at the Montgomery County Courthouse.  (*Id.* at 5, 8, 11).

The remaining defendants are ADOC employees.  Defendant Terry Quarker, a correctional officer at Fountain, is charged with giving plaintiff an "illegal urine specimen test,"

---

[1] Plaintiff mentions J. O Davis in response to the form's question concerning where the incident occurred, but the Court was unable to find other information in the complaint referring to J. O. Davis.

making it "positive," and breaking the chain of custody on August 24, 2009 because either the signatures by the mail service or U.P.S. are a forgery or there are no signatures from East Alabama Medical Center, thereby proving that "Quarker is in error." (*Id.* at 5). And plaintiff claims that he "l[ied] to the courts by giving false information." (*Id.*).

Defendant Walter Myers, Assistant Warden at Fountain, is alleged to have approved the finding of guilt by the disciplinary hearing officer in August, 2009, thereby overlooking "arbitrar[ily] and capriciously [and] recklessly ignor[ing]" the broken chain of custody. (*Id.* at 6).

Defendant Jacqueline Floyd, a correctional officer at Fountain, allegedly "falsified information to the court [when she held] back the chain of custody sheets" on October 10, 2009 at Fountain. (*Id.* at 8).

Defendant Alfred Ingram, Jr., a correctional officer at work release, allegedly refused to give plaintiff the chain of custody sheet and tampered with this sheet on November 12, 2008 and January 14, 2009. (*Id.* at 9).

Defendant Sgt. Richardson, a correctional officer at work release, allegedly permitted a urine specimen to be taken from plaintiff on November 13, 2008 and on January 14, 2009, which resulted in plaintiff being charged with a violation of Rule 90. (*Id.*). Defendant Richardson is also charged with "a broken chain of custody eviden[c]e form and tampering with it." (*Id.*).

Defendant Tony Patterson, Warden at work release, is alleged to have "concerted" with other defendant and approved of the disciplinaries based on specimens taken on November 13, 2008 and January 14, 2009. (*Id*. at 10).

Defendant James Deloach, Assistant Commissioner of ADOC, allegedly did not comply with the judge's order of September 24, 2009 to respond within thirty days and thus was in

3

default, causing a hearing to be set on December 13, 2009 in the Circuit Court of Montgomery County, which he did not allow plaintiff to attend. (*Id*. at 12). Plaintiff wrote to defendant Deloach informing him of these "major due process violation with criminal forgery activity by his staff in their acts of concert," but defendant Deloach failed "to act or intervene to uphold the . . . requirements of . . . Regulation[s] #403 and #440." (*Id*. at 13).

For relief, plaintiff requests that his money for testing fees associated with Rule 90 violations be returned, and that ADOC be ordered to return him to his prior custody status, to pay all court costs, and to remove from his file all Rule 90 violations, incident reports related thereto, and resulting disciplinaries and citations. (*Id.* at 7, 20).

### B. Amended Complaint. (Doc. 4).

In plaintiff's amended complaint, he further advises that he filed a motion for default judgment on December 3, 2009 for defendants' failure to comply with court's order, and then he filed a notice of appeal to the Court Criminal Appeals on December 3, 2009, which dismissed it on December 15, 2009 in favor of defendants. (*Id.* at 2). Plaintiff contends that "this trial courts or lower courts" are biased and prejudiced. (*Id.* at 3). He claims that he "is innocent, behind the fence, unemployed, indigent[.]" (*Id.*)

### C. Affidavit. (Doc. 5).

In his affidavit plaintiff adds that after the "trial court issued its order of dismissal of appellant's petition (CR-31), [he] appealed." (Doc. 5 at 2). He claims that the Constitution and its amendments and ADOC's regulation give him the right to be free from this act concerted by respondents to . . . take[] [him] from community based work[re]lease facility [thereby] den[ying] [his] creative liberty interest[] of parole." (*Id.*).

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing the complaint as amended (Docs. 1, 4, 5) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).[2] A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. ___, ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level and must be a 'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). The court will treat these factual allegations as true. *Iqbal,* 566 U.S. at __, 129 S.Ct. at 1949. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are not taken as true. *Id.* Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on

---

[2]The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke* was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996. *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001). However, dismissal is now mandatory under § 1915(e)(2)(B). *Id.* at 1348-49.

the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 593, 595-596, 30 L.Ed.2d 652 (1972). However, a court, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 129 S.Ct. 1937. And a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

**III. Analysis.**

    **A. Claims Against Scientist Defendants.**

In this action plaintiff's allegations do not convey a clear and complete picture of his claims. His allegations are confusing in that he does not identify the exact charge or charges on which he was found guilty and the punishment or punishments that he received, and he does not clearly identify the disciplinary on which he filed a lawsuit in state court and the state courts that have been involved in his state litigation.

Despite these shortcomings, in addition to others not described, the Court is able to deduce that plaintiff is complaining about being found guilty of disciplinaries that were allegedly defective. As a result, plaintiff's custody was changed and he was transferred from work release (Doc. 5) to an institution. Subsequently, plaintiff has been transferred to Decatur Work Center (Doc. 7).

To proceed with this action it is incumbent on plaintiff to plead a claim that is plausible on its face in order in order to avoid this action's dismissal for failure to state a claim upon which relief can be granted.  Plaintiff has not done this.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish:  "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986).  And in a § 1983 action, a plaintiff must causally connect a defendant's actions, omissions, customs, or policies to a deprivation of the plaintiff's constitutional or federal rights in order to state a claim under § 1983.  *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986); *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.), *cert. denied,* 464 U.S. 932 (1983).

In the present action, plaintiff has not shown that defendants Valaer and Colley acted under color of state law.  No allegations are provided indicating these scientists are state actors.  Accordingly, plaintiff has failed to state a § 1983 claim against the scientist defendants.

In the alternative, plaintiff has failed to establish that defendants Valaer and Colley violated a right under the Constitution when they did not file their affidavits in response to a state court judge's order.  Plaintiff has alleged that they violated an order from the state court, not a right arising under the federal Constitution.  *Campbell v. Arkansas State Hosp.,* No. 4:10cv00032 GTE/BD, 2010 WL 1052916, at *2 (E.D. Ark. Feb. 23, 2010) ("[A] state official's failure to abide by a state court's order, standing alone, does not entitle a plaintiff to any relief in federal court.").  For this reason, plaintiff has failed to state a claim against the scientist defendants under § 1983.

7

### B.  Claims against Correctional Defendants.

#### 1.  Claims Against Defendant Quarker.

Turning to the defendants who are employees of ADOC, who do act under color of state law, plaintiff must show that a right of his under the Constitution has been violated by each correctional defendant in order to state a § 1983 claim.  In the context of a challenge to a disciplinary proceeding, an inmate must show that he has an interest that is protected by due process and that each defendant deprived him of that protected interest.  *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

The Court will first analyze the plaintiff's allegations describing what each ADOC defendant did and whether the allegations state a claim, and then whether plaintiff has alleged an interest that is protected by due process.  Briefly, plaintiff alleged that defendant Quarker broke the chain of custody on August 24, 2009; in August, 2009, defendant Myers approved the finding of guilt by overlooking the broken chain of custody as revealed on the unidentified chain of custody form; defendant Ingram denied giving plaintiff the chain of custody sheet and tampered with the sheet on November 13, 2008 and January 14, 2008; defendant Richardson allowed a urine specimen to be taken from plaintiff on November 13, 2008 and January 14, 2009; and defendant Patterson acting in concert with others approved the disciplinary on November 13, 2008 and January 14, 2009.

In regard to the August, 2009 disciplinary, the allegations involving defendant Quarker do not describe a plausible claim against him.  That is, plaintiff's allegations are:

> Broke the chain of custody and lying to the courts, by giving false information. . . .The chain of custody was broke by correction officer (Terry Quarker) on August 24, 2009, by not allowing (East Alabama Medical Center) to (signature) their endorse signature on the (chain of custody form) that the U.P.S mail service never touch lied on the U.P.S mail service.

8

(Doc. 1 at 5).  These sentences do not convey a coherent thought much less a plausible claim.  Merely alleging that the chain of custody was broken is insufficient.  Facts must be alleged to show how the chain of custody was broken in order state a plausible due process claim.  *Iqbal,* 129 S.Ct. at 1948  (finding a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" in order to state a facially plausible claim).  Moreover, the phrase chain of custody is "a legal term of art" and is a conclusion that a court would draw based on facts presented.  *Cookson v. State,* 17 A.3d 1208, 1211 (Me. 2011) (finding that the Ninth Circuit "is credited with the first statement of the chain of custody requirement") (citing *Gallego v. United States,* 276 F.2d 914, 917 (9th Cir. 1960) (finding that before evidence can be admitted the evidence must be shown to be in the same condition as when the crime was committed)).  Because chain of custody is a legal phrase, the Court is not required to accept it as true, nor is it required to accept as true plaintiff's factually unsupported deduction that the chain of custody was broken.  *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Iqbal,* 129 S.Ct. at 1949, 1951).  And plaintiff claims that defendant Quarker "l[ied] to the court giving them false information" without providing any supporting factual information.  (Doc. 1 at 5).  Without supporting facts, plaintiff's assertion is merely a conclusion that the Court would draw.  Accordingly, plaintiff has failed to state a claim that is plausible against defendant Quarker.

### 2. Claim Against Defendant Myers.

This same reasoning applies to plaintiff's claim against defendant Myers.  Plaintiff alleges that defendant Myers approved the disciplinary conviction by overlooking the broken chain of custody and ignoring material facts and the perjured testimony of Andre Thomas.  (Doc. 1 at 6).  This claim similarly lacks facts for the Court to conclude that there was a broken chain

of custody, that the unidentified facts were material, and that the testimony was perjured. These allegations as well as the other allegations of "arbitrary and capricious" and "recklessly ignored" are legal terms of art or legal conclusions reached by the Court based on facts asserted. Due to the absence of supporting facts, plaintiff has failed to state a plausible claim upon which relief can be granted against defendant Myers.

### 3. Claim Against Defendant Ingram.

In regard to the disciplinaries that occurred at work release, plaintiff alleges that on November 13, 2008 and January 14, 2009, defendant Ingram refused to give him a chain of custody sheet and tampered with it. (Doc. 1 at 9). Again, plaintiff did not plead facts to support the conclusion that tampering had occurred. Moreover, no facts were provided that would show how being denied the chain of custody sheet amounts to a constitutional violation. Thus, the Court finds that a plausible claim has not been stated against defendant Ingram.

### 4. Claim Against Defendant Richardson.

On the same dates and at work release, plaintiff describes a claim against defendant Richardson based on "a broken chain of custody eviden[ce] form and tampering with it." (Doc. 1 at 9). This statement is not understood by Court. Then for the supporting facts plaintiff alleged that defendant Richardson allowed him to be forced to give a urine specimen which led to him being charged with a violation of Rule 90. (*Id.*). The Court does not see a correlation between plaintiff's description of his claim and the subsequent supporting facts that he pled. Nevertheless, neither the description of the claim nor the supporting facts, independently, state a plausible claim. As determined heretofore, the language contained in the claim lacks facts to support it, which are necessary to state a claim. And the supporting facts' language of being forced to give a urine specimen lacks facts to show unreasonableness in the prison setting in

order to state a plausible claim.  A factual showing that the search and/or seizure was unreasonable is necessary because "[t]he Fourth Amendment protects citizens against *unreasonable* searches and seizures." *Burgos v. Canino,* 641 F. Supp.2d 443, 461 (E.D. Pa.) (finding that the taking of inmate's urine for testing was reasonable and therefore did not violate the Constitution) (emphasis in original), *aff'd,* 358 F. App'x 302, 309 (3d Cir. 2009).  Accordingly, plaintiff has failed to state a claim upon which can be granted.

### 5. Claims Against Defendant Patterson.

In regard to these same dates, plaintiff alleges that defendant Patterson "concerted" with the other defendants and signed his approval. (*Id.*).  The Court deduces that plaintiff was attempting to state a conspiracy claim when he used the term "concerted."  However, to state a conspiracy claim "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly,* 550 U.S. at 556 -557, 127 S.Ct. at 1966.  "[A] plaintiff must show among other things, that the defendants reached an understanding to violate [his] rights." *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citation and quotation marks omitted).  In addition to pleading facts to show that an understanding was reached, an "underlying actual denial of [his] constitutional rights" must be shown. *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (brackets in original).

Plaintiff, however, did not allege any facts to show that an agreement was reached to violate his constitutional rights, nor has there been a showing of an actual denial of a constitutional right.  The only information about a conspiracy is plaintiff's simple assertion that defendant Patterson "concerted" with other defendants.  Plaintiff's allegation of a conspiracy is

11

conclusory in that no facts are alleged to support the legal conclusion of a conspiracy. While the Court can take as true the complaint's factual allegations, it cannot do so for a legal conclusion couched as a factual allegation, such as plaintiff's allegations that defendant Patterson "concerted." *Iqbal,* 129 S.Ct. at 1949-50. Here, there is no information on which to find that plaintiff's conspiracy allegation is plausible. And the fact that defendant Patterson approved the disciplinary conviction is a function that a warden typically performs. Thus, plaintiff's allegations against defendant Patterson are merely a conclusory allegation of conspiracy with an allegation of parallel conduct. Accordingly, these allegations fail to state a plausible conspiracy claim. *Twombly,* 550 U.S. at 556 -557, 127 S.Ct. at 1966; *see Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted).

### 6. Claims Against Defendant Deloach.

During August, 2009, plaintiff claims that he wrote to defendant Deloach "informing him of this serious major due process violation with criminal forgery activity by the staff in their acts of concert but respondent Deloach failed to act or to uphold the due process requirements of Administrative Regulation # 403 and # 440[.]" (Doc. 1 at 13). This claim against defendant Deloach is pled in the vaguest language and it does not show that defendant Deloach had a duty to act or intervene. Under § 1983 the duty to intervene is limited and does not extend to every situation. *Lepone-Dempsey v. Carroll County Comm'rs,* 159 F. App'x 916, 920 (11th Cir. 2005) (unpublished).[3] There is a duty to intervene when excessive force is being used. *Id.* But there is

---

[3] :Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

no duty to stop an unlawful arrest. *Id.* Clearly, disciplining an incarcerated felon is not as significant as being unlawfully arrested. Accordingly, plaintiff has not shown that he has plausible claim against defendant Deloach for failing to act or to intervene.

Moreover, a liberal construction of these allegations would be that defendant Deloach should have intervened in his disciplinary appeal. However, there is not a constitutional right to an appeal from a disciplinary. *Moulds v. Bullard,* 345 F. App'x 387, 389 n.1 (11th Cir. 2009) (unpublished) (finding there is no merit to a claim for the denial of an administrative appeal from a disciplinary proceeding). Accordingly, plaintiff has failed to state a claim against defendant Deloach in regard to his disciplinary proceedings.

Plaintiff has also directed claims arising from his state court litigation to defendant Deloach. Defendant Deloach was given an order on September 24, 2009 to respond but he did not do so and thus went into default. (Doc. 1 at 12). And defendant Deloach would not let plaintiff attend the December 13, 2009 hearing at the Montgomery County Courthouse. *Id.* As discussed above, the failure to respond to a state judge's order does not demonstrate a violation of a constitutional right. *Campbell,* 2010 WL 1052916, at *2. Furthermore, not allowing plaintiff to attend a hearing in a civil action that he brought in state court does not violate the Constitution. *Poole v. Lambert,* 819 F.2d 1025, 1028 (11th Cir. 1987) (holding that an inmate has no absolute right to attend his civil action's trial as "lawful incarceration necessarily limits an inmate's right to plead and mange his own case personally"). Thus, plaintiff has failed to state a plausible claim against defendant Deloach based on the state court proceeding.

### 7. Claim Against Defendant Floyd.

Plaintiff brings a claim against defendant Floyd for "falsified information to the court, holding back the chain of custody sheets." (Doc. 1 at 8). The facts offered to support this claim

13

simply are: "October 10, 2009 G.K. Fountain Correctional Facility 3800, Atmore, Alabama 36503." (*Id.*).  This date for this claim does not correspond with the disciplinary of August, 2009, and it comes after the September 24, 2009 order entered in the state court case. Consequently, the Court is not able to determine the proceeding to which this claim is related. Plaintiff refers to a "court" but also refers to Fountain.  Is the court a disciplinary court or a state court?  As can be observed, there is inadequate information to conclusively place this in the context of the other claims in this action.  Moreover, the actual allegations in the claim are lacking in factual information.  There are no allegations to show that the information was falsified.  Nor is there information on how holding back on the chain of custody sheets violates a constitutional right.  Thus, the Court finds that plaintiff has failed to state a plausible claim upon which relief can be granted.

After reviewing plaintiff's description of his claims, the Court finds that he has failed to articulate a plausible § 1983 claim and, therefore, his action is due to be dismissed for failure to state a claim upon which relief can be granted for this reason alone.

### C. Failure to Establish an Interest Protected by the Due Process Clause.

An alternate basis for the dismissal of this action is plaintiff has not shown that he has an interest that is protected by the due process clause.  Having discussed above plaintiff's failure to state a claim showing that he was deprived of due process, the Court will now address the issue of whether there was a protected interest to which due process would have attached.

The problems complained about by plaintiff are in the nature of due process violations. However, an inmate must have a protected liberty interest in order for due process to attach. *Wilkinson v. Austin*, 545 U.S. 209,  220, 125 S.Ct. 2384,  2393, 162 L.Ed.2d 174  (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life,

liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."); *see* U.S. CONST. amend, XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]).  In the absence of a protected interest, due process does not attach.  *Gray v. Board of Regents of Univ. Sys. of Ga.,* 150 F.3d 1347, 1350 (11th Cir.), *cert. denied,* 526 U.S. 1065 (1999).

In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court held an inmate must demonstrate a "grievous loss" in order for a liberty interest to be found so that due process attaches in a disciplinary proceeding.  *Id.* at 483, 115 S.Ct. at 2300 (recognizing that the good-time credits were a state-created liberty interest and their deprivation would be a "grievous loss").  The Court concluded that liberty interests generally will be "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison."  *Id.* at 484, 115 S.Ct. at 2300.  In applying this reasoning, the *Sandin* Court found that the inmate was not deprived of a liberty interest under the Constitution or of one created by state law when he was sentenced to thirty days in disciplinary segregation.  *Id* at 487, 115 S.Ct. at 2302.  Thus, he was not entitled to due process in the disciplinary hearing.  *Id.* at 475-77, 115 S.Ct. at 2296-97.  The Court concluded confinement to disciplinary segregation was not a dramatic departure from the ordinary conditions of incarceration, was the type of discipline a prisoner should expect as an incident to his criminal sentence, and "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  *Id.* at 485-86, 115 S.Ct. at 2301.  *See McKeithan v. Jones*, 212 F. App'x 129, 130 (3d Cir. 2007) (finding that the Court could not address the plaintiff's challenges to factual conclusions by the

hearing officer because under *Sandin* a protected interest was not violated); *Hartley v. McNeil,* CA No. 5:07-101-RS-EMT, 2008 WL 1844416, at *3 (N.D. Fla. Apr. 23, 2008) (unpublished) (holding that because the plaintiff did not have a liberty interest under *Sandin, supra,* the due process protections did not apply).

In the present action, plaintiff's allegations do not demonstrate that he has a liberty interest. Plaintiff has not attached a copy of his disciplinary reports which typically indicate whether a liberty interest was present in the form of the loss of good-time credits. In addition, the allegations from which the Court can construe a basis for a liberty interest are scarce. In these few allegations plaintiff contends that he has a "creative liberty interest of parole." (Doc. 5 at 2). Contrary to his assertion, courts have found that there is no liberty interest in parole in Alabama. *Greenholtz v. Inmates of The Neb. Penal and Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) (finding no inherent constitutional right to parole); *Thomas v. Sellers,* 691 F.2d 487, 489 (11th Cir .1982) (finding that no state-created liberty interest existed in parole in Alabama); *Carey v. Wynn,* No. 2:07–cv–1106–MHT, 2011 WL 738872, at *4 (M.D. Ala. Jan. 31, 2011) (unpublished) (same). And plaintiff's removal from work release did not impact a liberty interest. *Ragland v. Watson*, 2007 WL 1651107, at *4 -*5 (M.D. Ala. Apr. 17, 2007) (citing cases and finding that the inmate did not have a liberty interest in his change of custody and in his continued participation in the Alabama work release program), *adopted as modified*, 2007 WL 1651103 (M.D. Ala. June 4, 2007) (unpublished); *Dominique v. Weld,* 73 F.3d 1156, 1160 (1st Cir. 1996) (finding that in light of *Sandin* the court was barred from finding there was a liberty interest in continued participation in work release); *cf. Francis v. Fox,* 838 F.2d 1147, 1149 (11th Cir. 1988) (finding that an inmate in the Alabama prison system has no liberty interest which entitles him to participation in the work release program); *Kitchen v.*

*Upshaw,* 286 F.3d 179, 188 (4th Cir. 2002) (finding that pursuant to *Sandin* an inmate does not have a constitutionally protected liberty interest to participate in work release). In the present action, plaintiff has not shown through his allegations that removal from work release and return to an institution imposed an atypical and significant hardship in relation to the ordinary incidents of prison life or that the removal directly affected his sentence. *See Dominique,* 73 F.3d at 1160. Accordingly, the Court finds that plaintiff has not shown that he had a state-created liberty interest in his continued participation in work release or in parole. Thus, plaintiff has not stated a claim upon which relief can be granted.

      Along with plaintiff's transfer from work release, a change in custody apparently occurred because plaintiff requests to be restored to his prior unidentified custody status. (Doc. 1 at 7). A change in classification or custody status, however, does not implicate a constitutionally protected liberty interest. *Moody v. Daggett,* 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976). Furthermore, an inmate does not have constitutional right to remain in a specific prison although the conditions in one prison can vary greatly from those in another prison. *Meachum v. Fano,* 427 U.S. 215, 224-25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Thus, an Alabama inmate does not have a constitutionally protected interest in "his classification because the resulting restraint, without more, does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Johnson v. Boyd,* No. 2:09-0CV-1117- ID, 2011 WL 3439315, at *4 (M.D. Ala. May 26, 2011) (quoting *Sandin,* 515 U.S. at 484). Accordingly, a change in plaintiff's custody did not implicate a constitutional right and, as such, fails to state a claim upon which relief can be granted.

      In addition, plaintiff mentions in his request for relief that he wants "all of [his] money back that the [ADOC] took from [his] PMOD account many of times because of Rule violations

17

#90[.]" (Doc. 1 at 7). In his affidavit, he also complains about "illegal taking of charity funds from [his] p.m.o.d. account[.]" (Doc. 5 at 2). This is the extent of his allegations regarding money being taken from his inmate account. No other relevant information is provided except for that which is found in an attachment to the complaint, which is a copy of page 6 from Regulation 440. This regulation provides that "[a]ll inmates confirmed positive will be charged the current fee set by the outside toxicology laboratory (As of this date, the current fee is $31.50.)" *Id.* at 20, AR 440 (E)(6) (Jan. 25, 2007)). As a consequence of a positive drug test, an inmate will be charged a fee for the test. That is, an inmate is charged a fee as a result of a drug test, not as result of a disciplinary conviction. *See* AR 440 (E)(5) ("Disciplinary action will not be initiated on an inmate until a positive confirmation specimen report has been received from an outside independent laboratory.") (Doc. 1 at 20).

Plaintiff has not shown though his allegations that this unidentified money is a protected property interest. Courts where the claim has been more fully articulated have determined by applying the test from *Sandin* that a protected property interest does not exist. *Moncla v. Kelly,* 430 F. App'x 714, 717 (10th Cir. 2011) (finding that the inmate did not have a protectable property interest in a $20 drug retesting fee, a $3 state court filing fee, or any interest that could have been earned on these amounts because the removal of funds from his account was not a deprivation that imposed an atypical and significant hardship in relation to the ordinary incidents of prison life as he "was informed that he would be required to pay in the event of a positive test and made a voluntary choice" ); *Steffey v. Orman,* 461 F.3d 1218, 1222-23 (finding that a protected property interest was not implicated when a $50 money order sent to the inmate by another inmate's mother was seized as contraband because it was not an atypical and significant hardship subjecting him to conditions not ordinarily experienced by other inmates and it was a

18

typical incident of prison life).  Inasmuch as plaintiff complains about not receiving due process in connection with disciplinary hearings, he has not shown how a specific property interest was implicated by the disciplinary hearings.  In fact, he does not identify the property interests that were connected to his disciplinary hearings.  Accordingly, plaintiff has failed to state a plausible claim regarding a protected property interest.

Based on plaintiff's failure to establish an interest that is protected by the due process clause, plaintiff has failed to state a plausible claim, thereby providing another basis for the dismissal of this action.

**IV.  Conclusion.**

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

If plaintiff believes that he can cure the deficiencies noted with factual information, he must file an objection *and* a proposed amended complaint on the Court's § 1983 complaint form within twenty-one days (21) from the date of service of this report and recommendation, or if plaintiff believes that there is an error in the law and its application he is required to file an objection.  The Clerk is **DIRECTED** to send plaintiff a form for a § 1983 complaint.

DONE this 20th  day of March, 2012.

s/WILLIAM E. CASSADY

UNITED STATES MAGISTRATE JUDGE

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.       **Objection**.  Any party who objects to this recommendation or anything in it must, within twenty-one (21) days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[4] The Court is extending the time period for the filing of written objections to twenty-one (21) days .  *Cf.*  Fed.R.Civ.P. 72(b)(2) (A written objection should be file within "14 days after being served with a copy of the recommended disposition[.]")